# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE MARIE THOMAS,<br>          Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>          Defendant. | )<br>)<br>)<br>)  1:14-cv-00274-TFM<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

July 2, 2015

## I.    Introduction

Nicole Marie Thomas ("Plaintiff") brought this action for judicial review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner"), which denied her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(f). Now pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 8, 10), which have been fully briefed (ECF Nos. 9, 11) and are ripe for disposition. For the following reasons, Plaintiff's motion will be **GRANTED**, and the Acting Commissioner's motion will be **DENIED**.

## II.    Background

Plaintiff was born on October 10, 1978.[1] (R. 44). She is married and does not have any biological children; however, she has three stepchildren. (R. 45). She graduated from high school

---

1.    As of her alleged onset date, Plaintiff was 30 years old, making her a "younger person" under the Social Security Administration Regulations. 20 C.F.R. § 404.1563(c) ("If you are a

and completed a few college courses. (R. 47, 208). She has past relevant work experience as a cashier, kennel attendant, still photographer, shift manager, waitress, fast food worker and retail cashier/stocker. (R. 33). However, she has not engaged in substantial gainful activity since her alleged onset date of June 13, 2009. (R. 18). This appeal relates to the assessment of Plaintiff's migraine headaches, so the Court will only recount the medical evidence as it relates to that condition.

### A. Medical Evidence

Plaintiff testified that she stopped working as a portrait studio photographer in 2009, mainly due to "getting my migraines at the time," though she also had an issue with her hand that caused her to drop objects. (R. 50). According to Plaintiff, her migraines "dictate" her life. (R. 60). They occur on a weekly basis and can last two to three days at a time, requiring her to lie down for four to five hours. (R. 60). On bad days, she spends the entire day in bed. (R. 59, 65). Noise and light made things worse, to the point that Plaintiff has installed "blackout" curtains in her bedroom. (R. 60). She testified that when she worked at Wal-Mart, she took Family and Medical Leave Act Leave due to her migraines because she could not work through them. (R. 61).

Although Plaintiff apparently has a long history of migraines, they are not referenced in the medical evidence until April 10, 2012. (R. 623). On that date, Plaintiff called her primary care physician Dr. Kreig A. Spahn's office to tell him that she had been experiencing a migraine for a few days. On June 18, 2012, Plaintiff presented for a follow-up visit with Dr. Spahn regarding lumbago and hypertension. (R. 618). His treatment notes stated that Plaintiff was feeling better, but no mention was made of migraines. (R. 617). Two months later, on August 7,

---

younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work.").

2012, records from Dr. Spahn indicate that Plaintiff was restarted on Nortipryline to treat her lumbago.

Plaintiff phoned Dr. Spahn's office on August 16, 2012, requesting a prescription for Fiorcet for her migraines. (R. 613). She had previously been prescribed this medication, but not since 2008 or 2009. *Id.* On August 24, 2012, Plaintiff followed up with Dr. Spahn with regard to her migraines. (R. 610). She reported that she experienced three headaches a month, each of which lasted four days. *Id.* The headaches were accompanied by nausea, vomiting, photophobia, and phonophobia, but Plaintiff said that Fiorcet helped to "take the edge off." (R. 610). On August 28, 2012, however, Plaintiff phoned Dr. Spahn's office stating that Fiorcet was not helping. (R. 609). She was told to wait two days, and advised that she might need to change medication if the migraines persisted. *Id.*

Plaintiff next saw Dr. Spahn on September 11, 2012. (R. 607). She reported that the Fiorcet was not working, so she began using more Vicodin than prescribed. *Id.* Nontheless, the headache still lasted a couple weeks, though it had resolved prior to her appointment. *Id.* Dr. Spahn noted that Plaintiff's migraines were "suboptimally controlled." (R. 608). He started her on Imitrex, adjusted her dosage of Nortiptyline, and instructed her to follow up in a month. *Id.*

On September 13, 2012, Plaintiff underwent a CT scan without contrast at the behest of Dr. Spahn. (R. 574). Sequential noncontrasted tomographic images were obtained from the skull base to the high convexity of the head. *Id.* The findings were unremarkable with no hemorrhage or mass depicted. *Id.*

On November 13, 2012, Plaintiff presented to Dr. Spahn for an evaluation of her migraines. (R. 605). Treatment notes state that the headaches were occurring in an "increasing pattern" – up to "a couple times a week." *Id.* Plaintiff stated that she would wake up with "full

blown" headaches and vomiting. *Id.* In the assessment section of the record, Dr. Spahn noted that Plaintiff's migraines were again "suboptimally controlled." (R. 606). He continued Plaintiff on Celexa and increased her prescription of Nortriptyline HCI from one capsule to three capsules every night. (R. 606, 607).

On December 14, 2012, Plaintiff returned to Dr. Spahn, complaining that her pain medications were no longer helping control her migraines. (R. 602). She reported that she would still awake with migraines, accompanied by vomiting. *Id.* Once again, Dr. Spahn noted that the migraines were "suboptimally controlled," so he decreased Nortriptyline HCI from three capsules to two capsules every night. (R. 604, 606).

On February 12, 2013, Plaintiff met with Dr. Colantonio for a follow-up regarding her hand pain. (R. 579). She stated during that visit that her headaches were somewhat better. *Id.* Plaintiff had another follow up with Dr. Colantonio on April 16, 2013, in which she stated that nothing helped with her migraines. (R. 576).

On April 24, 2013, Plaintiff presented to Dr. Spahn complaining of a headache. (R. 591). Treatment notes indicate that the headache was "acute" and had been "occurring in an episodic pattern for 20 years," with each episode lasting a week. *Id.* Symptoms included "flashing lights, nausea, neck stiffness, tenderness over her temporal areas and vomiting," and according to Plaintiff, they were exacerbated by noise and bright lights. *Id.* Dr. Spahn noted that Plaintiff's migraines were still "suboptimally controlled" and prescribed Propranolol. (R. 592).

**B.    Procedural History**

Plaintiff protectively filed applications for DIB and SSI on February 29, 2012, alleging disability as of June 13, 2009, due to chronic hand pain and fibromyalgia. (R. 16, 76). After Plaintiff's claims were denied at the administrative level on April 24, 2012, she requested a

hearing, which was conducted via video on July 25, 2013. (R. 16). Plaintiff appeared in Erie, Pennsylvania, and Administrative Law Judge Wayne Stanley ("ALJ") presided over the hearing from Mars, Pennsylvania. Plaintiff was represented by counsel and testified at the hearing, as did an impartial vocational expert ("VE"). (R. 40-75).

On August 2, 2013, the ALJ issued an unfavorable decision to Plaintiff. (R. 34). Fourteen months later, the Appeals Council denied her request for review, making the decision of the ALJ the final decision of the Acting Commissioner. On November 12, 2014, Plaintiff filed her Complaint in this Court, in which she seeks judicial review of the decision of the ALJ. The parties' cross-motions for summary judgment then followed.

## III. Legal Analysis

### A. Standard of Review

The Act strictly limits this Court's power to review the Commissioner's final decision. 42 U.S.C. §§ 1383(c)(3). "This Court neither undertakes a de novo review of the decision, nor does it re-weigh the evidence of the record." *Thomas v. Massanari,* 28 F.App'x 146, 147 (3d Cir. 2002). Instead, this Court's "review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence." *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010). Importantly, "[t]he presence of evidence in the record that support a contrary

conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x 761, 764 (3d Cir. 2009).

### B. Sequential Evaluation Process

When deciding whether an adult claimant is disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted). *See also* 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes a plaintiff from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

When a claimant has multiple impairments, which may not individually satisfy the requirements of any of the Listed Impairments, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

**C.     Discussion**

Following the applicable five-step sequential evaluation process, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since June 13, 2009. At step two, the ALJ found that Plaintiff's right hand injury, fibromyalgia, migraine headaches, and obesity were "severe" impairments. (R. 18). At step three, the ALJ determined that Plaintiff's impairments did not satisfy the criteria of any of the Listed Impairments. (R. 19). Accordingly, prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the [RFC] to perform light work as defined by 20 C.F.R. 404.1567(b) and 416.967(b) except that [Plaintiff] can occasionally push and pull with the right upper extremity; cannot climb ladders, ropes, or scaffolds; can occasionally kneel and crouch; can never crawl; can occasionally engage in handling and fingering with the right hand; and should avoid concentrated exposure (for more than two-thirds of the workday) to extremes of cold temperatures, vibration, and workplace hazards.

(R. 21). In the section of his decision addressing Plaintiff's RFC, the ALJ acknowledged her complaints regarding her migraines, but, largely repeating the analysis from step three, he discredited Plaintiff's testimony with respect to her symptoms because Plaintiff (1) made "infrequent references to headache symptoms until recently and went for several years without her Fioricet prescription," (2) "was inconsistent in her treatment," and (3) engaged in daily activities which did "not support her statements regarding the length of these symptoms and the associated limitations." (R. 32). He also noted that "[a] CT scan of the brain was unremarkable, and there were no indications of any cause for the increased reports of migraine activity." *Id.* Finally, to determine the extent to which Plaintiff's limitations erode the occupation base, the ALJ asked the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience and RFC. The VE testified that given all the factors, Plaintiff would be able to perform the requirements of occupations such as an usher, furniture rental clerk, or office helper. Thus, consistent with the VE's testimony, the ALJ found that Plaintiff is not disabled within the meaning of the Act.

Plaintiff argues that the ALJ's decision must be remanded because he failed to properly evaluate the evidence related to her migraines. Plaintiff contends that the ALJ erred in determining that her statements concerning the intensity, duration and limiting effects of the migraine symptoms were not entirely credible. In particular, she submits that the ALJ erroneously relied on the purported "recent" onset of her migraines, along with her activities of

8

daily living and the unremarkable CT scan, to undermine her credibility, even though none of this evidence was actually inconsistent with her reported symptoms. And, in turn, Plaintiff contends that the ALJ's RFC failed to take into account the limitations caused by her migraines. The Court agrees.

The crux of Plaintiff's contention is that the ALJ provided insufficient reasons for discounting her complaints of migraine-related symptoms. When making a credibility determination, the ALJ is required to consider all of a plaintiff's symptoms and make a determination based on all available evidence, including a plaintiff's subjective reports of pain. 20 C.F.R. § 416.929(a). As this Court has previously explained, "[t]he ALJ must give complaints of pain (such as migraines) 'serious consideration,' and view the plaintiff's testimony 'in light of medical and other evidence.'" *Parsley v. Astrue*, 2009 WL 1940365, at *3 (W.D. Pa. July 2, 2009) (quoting *Brown v. Astrue*, 2008 WL 700064 (D.N.J. Mar. 12, 2008)). Once made, credibility determinations by the ALJ are generally entitled to deference by a reviewing court. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003).

When a disability determination requires an assessment of the level of pain alleged, the Social Security Regulations provide a framework in which the subjective complaints are to be measured. *See* 20 C.F.R. §§ 404.1529, 416.929. An ALJ is required to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." *Hartanft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999). Cases that involve an assessment of subjective reports of pain "require[] the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id.* (citing 20 C.F.R. § 404.1529(c)). "[A]n ALJ must be particularly diligent in making credibility determinations with regard to migraines, because laboratory tests cannot prove their existence."

9

*Parsley* at *4 (citations omitted). Because of that, "'when presented with documented allegations of symptoms which are entirely consistent with the symptomatology for evaluating the claimed disorder,' it is not appropriate for the ALJ to reject "the claimant's testimony based on the mere absence of objective evidence.'"*Abbruzzese v. Astrue*, 2010 WL 5140615, at *7 (W.D. Pa. Dec. 9, 2010).

Courts have established several criteria for determining when a plaintiff's complaints of migraine-related symptoms are credible. In *Baker v. Barnhart*, 2006 WL 1722414 (E.D. Pa. June 21, 2006), for example, the district court found the plaintiff's complaints to be credible where the record included a long history of migraine headaches, physicians made treatment notes regarding migraines, and the plaintiff had received diagnoses of migraines in the past. *Id.* at *3. Likewise, in *Abbruzzese*, the court rejected the ALJ's reliance on the lack of objective evidence supporting the plaintiff's claim of migraines where the plaintiff had headaches every day, with more serious headaches three or four days per week, "with photophobia, phonophobia, nausea, vomiting and lightheadedness." 2010 WL 5140615, at *7. Favorable credibility determinations have also been made where a plaintiff received treatment and was prescribed medication for migraines. *See Diaz v. Barnhart*, 2002 WL 32345945, at *6 (E.D. Pa. Mar. 7, 2002); *see also McCormick v. Secretary of Health and Human Services*, 861 F.2d 998, 1000 (6th Cir.1988) (finding that the plaintiff suffered from migraines despite a normal brain scan); *Brummet v. Barnhart*, 2006 WL 3248452, at *8 (S.D. Ind. June 13, 2006) (finding that migraines are a severe impairment based on a doctor's notation and prescribed treatment). Ultimately, all of these courts have looked to "symptom patterns" in their efforts to assess a plaintiff's credibility with regard to migraines. *Federman v. Chater*, 1996 WL 107291, at *2-3 (S.D. N.Y. Mar. 11, 1996) (citations omitted).

As in those cases, Plaintiff's testimony and the treatment records indicate the she has a long history of migraines beginning approximately 20 years ago. Although there is a gap in the treatment record, suggesting that Plaintiff had not taken medication for her headaches since 2008 or 2009, treatment notes reveal consistent complaints of migraine symptoms and treatment over the 15-month period prior to the administrative hearing. (R. 591, 592, 602, 605, 607, 610). During this time, Plaintiff testified that she experienced migraines two to three days per week. She testified that her migraines forced her to lie down for several hours at a time, and when her symptoms are at their worst, she spent up to two days at a time in bed. (R. 59-60). Similar complaints were documented during her visits with Dr. Spahn starting in the spring of 2012 and continuing until the spring of 2013, just three months before her administrative hearing. As she described to Dr. Spahn, her headaches were accompanied by nausea, vomiting, flashing lights, neck stiffness, and tenderness over her temporal areas and, these symptoms were exacerbated by noise and bright lights. (R. 592, 610). Indeed, throughout this period, Dr. Spahn consistently noted that Plaintiff's migraines were still "suboptimally controlled" and attempted to adjust her medications to improve her prognosis.

Yet, the ALJ rejected Plaintiff's complaints of migraines and failed to account for any limitations stemming therefrom in his RFC assessment. This finding cannot be sustained, as there are several problems with the ALJ's assessment of the evidence related to Plaintiff's migraines.

First, as Plaintiff argues, although the ALJ is correct that Plaintiff did go some time without receiving treatment for her migraines, he failed to explain why this was a basis for discrediting her testimony as to the uptick in her symptoms in April 2012 and continuing thereafter until the hearing. Plaintiff was not required to establish disability as of her alleged

onset date. Instead, she only had to show that on the date of the hearing she suffered an impairment that precluded "her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli*, 247 F.3d 34 at 38-39. A year's worth of complaints of debilitating migraines could, under certain circumstances, suffice.

Moreover, the ALJ inappropriately considered Plaintiff's daily activities to be inconsistent with the reported severity of her migraines. Plaintiff testified that her daily activities included taking her dog out, washing dishes and cooking periodically, vacuuming her home, using the computer for Facebook, reading, grocery shopping with assistance, and visiting friends occasionally. (R. 22). She also testified, however, that she needed to lie down for four to five hours at a time when suffering from migraines – which was about twice a week. And when her worst migraines struck, she was bedridden for up to two days at a time. "One can logically infer that when [Plaintiff] is not experiencing a severe headache, [she] can perform normal tasks." *Abbruzzese*, 2010 WL 5140615, at *8. But this argument ignores that Plaintiff's "headaches are episodic, thus affecting [her] ability to work on a regular, sustained basis." *Id.* As the Seventh Circuit Court of Appeals has persuasively explained, "full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014). "Thus, Plaintiff's ability, in the case now before the Court, to perform some limited household duties and hobbies when not experiencing migraines is not evidence that she is able to work full time 'day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" *Carlson v. Astrue*, 2010 WL 5113808, at *14 (D. Minn. Nov. 8, 2010) *report and recommendation adopted*, 2010 WL 5100785 (D. Minn. Dec. 9, 2010) (quoting *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982)). It was improper for the ALJ to conclude otherwise.

Likewise, the ALJ erred in rejecting Plaintiff's testimony because it could not be verified by objective testing. As various courts have made clear, "migraine headaches 'cannot be detected by imaging techniques, laboratory tests, or physical examination.'" *Salberg v. Astrue*, 2012 WL 4478310 at *13 (W.D. Pa. Sept. 27, 2012) (citing *Abbruzzese,* 2010 WL 5140615 at *7). Nevertheless, "it *is* possible to present objective-like evidence to establish the severity of the claimed impairment such as the treating physician's personal observations of any physical manifestations of pain, chart notes reflecting ongoing attempts at treatment with medication(s) . . . a record of associated symptoms, or other similar evidence." *Franklin v. Astrue,* 2012 WL 1059995, at *4 (D. Colo. Mar. 28, 2012) (emphasis added). In this case, Plaintiff did just that. Although her September 2012 CT scan was unremarkable, Dr. Spahn nevertheless diagnosed her with migraines, and her treatment records document repeated complaints of the associated symptoms, such as nausea, flashing lights, photophobia, phonophobia, and vomiting, over an extended period. They further reveal that despite her ongoing attempts at treatment with medication, her migraines were still not fully controlled. "In fact, the record does not contain any statements by doctors questioning the frequency or severity of Plaintiff's migraine headaches." *Carlson*, 2010 WL 5113808, at *12 (citing *Stebbins v. Barnhart*, 2003 WL 23200371 at *2 (W.D.Wis. Oct. 21, 2003)). "Nor did any doctor suggest Plaintiff was lying or not credible when discussing her migraines." *Id.* Finally, "[t]he ALJ cannot point to any objective evidence in the record to support his own conclusion that Plaintiff's migraines were not as severe or as frequent as she claimed." *Id.* Overall, therefore, the ALJ did not sufficiently substantiate his decision for rejecting Plaintiff's testimony regarding the severity of her migraines.[2]

---

2.  However, Plaintiff's argument that it was blatantly improper for the ALJ to use "low" earnings as a discrediting factor is without merit. An ALJ is entitled to consider low earnings as reflecting adversely on a claimant's credibility. In fact, an ALJ may discount credibility based on

The Court also agrees with Plaintiff's related argument that the ALJ erred in formulating Plaintiff's RFC. RFC is defined as the most a person can "do despite the limitation caused by his or her impairment(s)." *Smith v. Astrue,* 2012 WL 4056095, at *16 (W.D. Pa. Sept. 14, 2012) (citations omitted). In determining a claimant's RFC, the ALJ is required to consider the effect of all impairments that he determines at step two to be "severe." *Cadillac v. Barnhart,* 84 F. App'x 163, 167 (3d Cir. 2003) (citing 20 C.F.R. § 404.1526(a)). The ALJ must decide whether the limitations stemming from those impairments are credible, and then account for all credibly established impairments in his RFC assessment. *Rutherford,* 399 F.3d at 554. Importantly,

> limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it.

*Id.* (citations omitted)

In this case, the ALJ found that Plaintiff's migraines were a "severe impairment," yet did not account for any limitations arising from this impairment in his RFC (e.g., Plaintiff's inability to be around loud noises and bright lights and need to frequently lie down). Of course, the "step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Franklin,* 2012 WL 1059995, at *3 (citations omitted). "At step two, the ALJ looks at the claimant's impairment or combination of

---

an earnings history where a claimant earned over $10,000 for only four years or less. *See Morealli v. Astrue*, 2010 WL 654396, at *7 (W.D. Pa. Feb. 23, 2010) (citing *Mannisi v. Astrue*, 2008 WL 441767, at *21 (W.D. Mo. 2008)). The Plaintiff's work history is merely one of many factors the ALJ is to consider in assessing subjective complaints, 20 C.F.R. § 404.1529(c)(3), and the ALJ is not required to equate a long work history with credibility. *See Christi v. Astrue,* 2008 WL 4425817, at *12 (W.D. Pa. Sept. 30, 2008).

impairments and determines the impact the impairment would have on her ability to work." *Id.* As a result, just because Plaintiff established that her migraines were "a 'severe impairment', which only requires a 'de minimis' showing of impairment, d[id] not *necessarily* require that the ALJ conclude that the impairment materially erodes plaintiff's RFC." *Id.* (emphasis in original). Still, "concluding that an impairment is severe at step two is relevant to plaintiff's functional capacity because only those impairments that significantly limit a plaintiff's ability to do basic work activities qualify as 'severe.'" *Franklin*, 2012 WL 1059995, at *4. Thus, "[a]n explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation." *Spears v. Colvin*, 2013 WL 5350916, at *4 (E.D. Okla. Sept. 25, 2013) (citing *Timmons v. Barnhart*, 118 F. App'x 349, 353 (10th Cir. 2004)).

The ALJ provided no such explanation even though he failed to account for *any* limitations arising from Plaintiff's migraines in his RFC. In fact, he failed to even so much as acknowledge that Plaintiff's migraine-related symptoms were made worse by light and sound – the two most obvious things that he could have taken into consideration when formulating Plaintiff's RFC. His failure to do so must be addressed when this case is remanded. In particular, on remand, in addition to reassessing the credibility of Plaintiff with respect to her migraine-related symptoms, the ALJ must address whether any of the impairments stemming from her migraines – including her inability to be around light and sound and her alleged need to lie down on a frequent basis when suffering from migraines – are credibly established and should be accounted for in her RFC.

## IV. Conclusion

Under the Social Security regulations, a federal district court has three options upon

15

review of a decision of the Commissioner denying benefits. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all of the evidence in the record, the Court finds that the ALJ failed to support his decision with substantial evidence and that the decision must be remanded to the ALJ for further consideration consistent with this Memorandum Opinion. The Commissioner's decision in the present case may, however, ultimately be correct and nothing hereinabove stated should be taken to suggest that the Court has concluded otherwise.

For these reasons, Plaintiff's motion for summary judgment will be **GRANTED** insofar as it requests a remand for further consideration in accordance with sentence four of 42 U.S.C. § 405(g); Defendant's motion for summary judgment will be **DENIED**; and the decision of the ALJ will be **VACATED** and **REMANDED** for further consideration not inconsistent with this Opinion. An appropriate order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE MARIE THOMAS,<br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>　　　　　Defendant. | )<br>)<br>)<br>)  1:14-cv-274-TFM<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

**AND NOW**, this 2nd day of July, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's MOTION FOR SUMMARY JUDGMENT (ECF No. 8) is **DENIED**, and Plaintiff's MOTION FOR SUMMARY JUDGMENT (ECF No. 10) is **GRANTED** to the extent that Plaintiff seeks remand for further consideration, and the matter is **REMANDED** to the Commissioner for further proceedings consistent with the foregoing Memorandum Opinion. The Clerk shall docket this case as **CLOSED**.

　　　　　　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　　s/ Terrence F. McVerry
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

cc:　　**Gerald Michael Sullivan**
　　　　Email: heysullivan@windstream.net

　　　　**Christian A. Trabold**
　　　　Email: christian.a.trabold@usdoj.gov

　　　　(via CM/ECF)